UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                        )
JIMMY L. NANCE,                          )
                                                        )
            Plaintiff,                          )
                                                        )
            v.                                     )        Civil Action No. 08-1643 (RWR)
                                                        )
FEDERAL BUREAU OF                   )
INVESTIGATION,                          )
                                                        )
            Defendant.                         )
———————————————————— )

<u>MEMORANDUM OPINION</u>

    Pro se plaintiff Jimmy L. Nance filed this complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522, against the Federal Bureau of Investigation ("FBI"), alleging that the FBI had wrongfully denied him access to forensic evidence he had requested.  The FBI has moved under Federal Rule of Civil Procedure 56 for summary judgment, arguing that, although it failed to locate a forensic test that Nance had requested, its search was sufficiently reasonable and that it provided him with all responsive non-exempt information.  Because there is no genuine factual dispute as to the reasonableness of the FBI's search and the FBI is entitled to judgment as a matter of law, the motion for summary judgment will be granted.

<u>BACKGROUND</u>

    In 1992, Nance was convicted of the murder of federal postal employee Donna Stevenson and sentenced to life imprisonment. During the investigation into Stevenson's death, the U.S. Postal

-2-

Inspection Service asked the FBI's Laboratory Division to examine certain items discovered during the investigation.  According to the FBI, the submitted items were examined, analyzed, documented, and subsequently returned with their reports to the U.S. Postal Service.  Between 1996 and 2008, Nance submitted to the FBI a number of FOIA requests seeking forensic evidence that he believed would exonerate him of the murder conviction.  (Compl. ¶¶ 3, 9; Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 1, 4-10.)  Nance claims that he received incomplete responses to his requests and that he was unlawfully denied access to information that the FBI possessed and that he had a right to see.  (Compl. ¶¶ 3, 5-9.)

On February 10, 2008 Nance sent to the FBI FOIA request number 1111039-000, which asked for a verified copy of the Wythe County Sheriff's Office Narrative Summary of Nance's criminal case, verified copies of all negative control tests done on Stevenson's blood, or in the alternative a statement in writing that negative control tests were not done.  The FBI acknowledged that request, and informed Nance that the only files located in response to his request were Nance's previous FOIA requests, and that the only files pulled were the two he had previously received.  (Def.'s Stmt. of Mat. Facts ("Def.'s Stmt.") ¶¶ 18-20.)

-3-

Nance filed the instant complaint seeking to compel the defendant to provide him access to the following documents: (1) "[n]egative control tests done on blood samples of Jimmy Nance and Donna Stevenson"; (2) "[n]otes and findings of Agent(s) Jennifer Lindsay and Audrey Lynch"; and (3) "[l]uminol test results done on [Nance's] vehicle and clothes[.]"  (Compl. ¶ 9.) The United States Attorney's office sent a letter to Nance confirming that negative control tests had been conducted, stating that those tests and their results were no longer in the FBI laboratory file pertaining to Nance's criminal case, informing Nance that the file appeared to contain all relevant notes pertaining to the DNA examinations performed, and revealing that no luminol tests on any items from Nance's case had been conducted at the FBI laboratory.  (Pl.'s Opp'n at 22-23, Ex. 4.)

The FBI has moved for summary judgment under Rule 56, arguing that Nance failed to exhaust his administrative remedies with respect to all requests other than request number 1111039-000, and that the FBI performed reasonable searches of its records in response to each of Nance's requests and provided Nance with all documents in its possession responsive to those requests, subject to certain redactions in compliance with applicable FOIA exemptions.  (Def.'s Mem. at 12-14, 43-45.)

The FBI attached to its motion for summary judgment a declaration from David M. Hardy, Chief of the Record/Information

-4-

Dissemination Section, Records Management Division, at the FBI's
Interim Central Records Complex in Winchester, Virginia. (Id.,
Hardy Decl. at ¶ 1.)  In this declaration, Hardy explained in
detail the processes by which the FBI conducts searches in
response to FOIA requests generally, and how it conducted
searches specifically in response to Nance's requests, including
how and under what provisions of the FOIA it redacted certain
information from responsive documents.  Hardy asserts that the
FBI searched its Automated Case Support System to search its
Central Records System ("CRS") using Nance's name, Nance's social
security number, Nance's birth date, and Stevenson's name, in an
attempt to find documents responsive to Nance's request.  Hardy
said through each search of the CRS, the FBI found three
investigatory files responsive to Nance's requests.  File number
95A-HQ-1036805, the lab file from the criminal investigation, was
a closed file sent from the FBI's Laboratory Division to be
stored at the FBI's Alexandria Records Center ("ARC").  Hardy
states that the FBI requested that the ARC pull file number 95A-
HQ-1036805, and ship it to FBI headquarters for review and
processing.  However, the lab file had been processed and its
contents released two previous times - - once to Nance during
previous litigation, and once to Nance's son on Nance's behalf
in 2007.  (Hardy Decl. ¶ 19, 33; Def.'s Stmt. ¶¶ 14-15.)  In
addition, Hardy's searches revealed file 252A-RH-42534(HQ), which

-5-

contained information that was forwarded to the National Center for the Analysis of Violent Crime, processed, and released to Nance in 2007.  (Hardy Decl. ¶ 33)  Further, Hardy's search revealed a Violent Crime Apprehension Program ("ViCap") report in file number 252A-IR-C983, serial 1993VA00013, which was held by the FBI's Critical Incident Response Group.  However, Hardy noted that the only file that would contain responsive information to Nance's complaint was the lab file, file number 95A-HQ-1036805. (Id. ¶¶ 30-31.)

Hardy claims that the Record/Information Dissemination Section ("RIDS") consulted the DNA Analysis Unit of the FBI's Lab Division to locate the information specifically requested by Nance.  The DNA Analysis Unit informed RIDS that no testing procedure that the FBI lab conducted supported the assertion that human skin was found under Stevenson's fingernails, and that while human blood was identified under Stevenson's fingernails, there was insufficient material to enable further examination. (Hardy Decl. ¶ 59.)  The DNA Analysis Unit also informed RIDS that the FBI lab did not perform luminol or saliva tests on items from Nance's case, and that the only negative control tests associated with Stevenson's blood samples would have been related to the amplification of DNA for DQ alpha testing.  However, the pages that would have described the use of negative control tests on Stevenson were absent from the lab file.  RIDS attempted to

-6-

locate the missing pages regarding the negative control tests by
contacting current employees who had worked in the Laboratory
Division or the DNA Legal Assistance Unit, but the former
employees could only speculate as to the reason that the pages
were missing or as to their location.  (Id.)

Nance opposes the FBI's motion for summary judgment, but
does not directly contradict the FBI's assertion that he has
exhausted his administrative remedies only with respect to
request number 1111039-000.[1]  (See Pl.'s Mem. Br. in Supp. of
Opp'n ("Pl.'s Opp'n") at 4.)  Instead, Nance argues that "the
focal point of this case is now . . . [v]erified copies of all
negative control tests done on the blood of Donna Stevenson[.]"
(Id.)  Nance also argues that summary judgment is not appropriate
here because "genuine issues of material fact remain in dispute
as it relates to the FBI's search in the 'pre-suit' context."
(Id. at 5.)

---

[1] An earlier order informed Nance that, under Local Civil
Rule 7(h), any facts in the moving party's statement of material
facts would be treated as admitted by Nance unless he denied or
rebutted such facts in his opposition.  (See Docket Entry # 21 at
2; see also Def.'s Mem. at 1-2.)  Because Nance was informed of
this requirement, he was required to comply with it despite being
a pro se litigant.  See Neal v. Kelly, 963 F.2d 453, 456 (D.C.
Cir. 1992).  Nance has not denied that he failed to exhaust his
administrative remedies with respect to his FOIA requests other
than request number 1111039-000 (see Def.'s Stmt. ¶¶ 12, 15, 17),
and thus he has conceded that issue.  A FOIA claim will be
dismissed when the plaintiff failed to exhaust his administrative
remedies before filing suit.  See Ebling v. United States DOJ,
796 F. Supp. 2d 52, 66 (D.D.C. 2011).

## DISCUSSION

"'Summary judgment may be appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.'"  Pueschel v. Nat'l Air Traffic Controllers Ass'n, 772 F. Supp. 2d 181, 183 (D.D.C. 2011) (quoting Bonaccorsy v. Dist. of Columbia, 685 F. Supp. 2d 18, 22 (D.D.C. 2010) (citing Fed. R. Civ. P. 56(c))).  Courts draw all reasonable inferences from the evidentiary record in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "A district court must conduct a de novo review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action."  Milton v. U.S. Dept. of Justice, 783 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing 5 U.S.C. § 552(a)(4)(B)).  In a FOIA case, a court will grant summary judgment in favor of an agency where the agency demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control that was reasonably forecast to divulge all relevant information, Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and that the information found through the search has either been released to the requestor or is exempt from disclosure.  See Skinner v. U.S. Dept. of Justice, 806 F. Supp. 2d 105, 111 (D.D.C. 2011) (citing Students Against Genocide v. Dep't of

State, 257 F.3d 828, 833 (D.C. Cir. 2001)).  To show that the
agency's search used methods which were reasonably expected to
produce the desired information, Morley v. CIA, 508 F.3d 1108,
1114 (D.C. Cir. 2007), the agency may submit declarations that
explain in reasonable detail the scope and method of the search.
Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982).  Without
contrary evidence, the agency's amply detailed affidavits are
sufficient to demonstrate compliance with the FOIA.  Perry, 684
F.2d at 127.  A search does not have to be exhaustive, and
whether a search is adequate is determined by methods, not
results.  Weisberg, 745 F.2d at 1485.  An agency's failure to
locate a specific responsive document will not, on its own,
render an otherwise reasonable search inadequate.  See Brown v.
FBI, 675 F. Supp. 2d 122, 125-26 (D.D.C. 2009) (citing Weisberg,
745 F.2d at 1485, and Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir.
2004)).

Nance argues that the FBI's pre-suit searches failed to meet
the standard required for an adequate search, but Nance admits
that the FBI's post-suit acknowledgment that the negative control
tests were conducted rendered what he calls their adequate search
defense "viable and almost legally sufficient to prevail on
summary judgment [in the 'post-suit' context]."  (Pl.'s Opp'n at
4-5) (emphasis added).  However, at summary judgment in a FOIA
case, the timing of a search is irrelevant, so long as an

-9-

adequate search has been conducted and all redactions from

responsive documents are justified.  See Landmark Legal

Foundation v. EPA, 272 F. Supp. 2d 59, 62-63 (D.D.C. 2003)

(citing Atkins v. Dep't of Justice, No. 90-5095, 1991 WL 185084,

at *1 (D.C. Cir. Sept. 18, 1991) (stating that "[t]he question

whether [the defendant] complied with the [FOIA's] time

limitations in responding to [plaintiff's] request [was] moot"

where the defendant had responded prior to filing a motion for

summary judgment).  If the FBI demonstrates that it conducted an

adequate search with proper redactions at some point prior to

filing for summary judgment, Nance's distinction between pre-suit

and post-suit searches becomes irrelevant.  See also National

Institute of Military Justice v. U.S. Dept. of Defense, 404 F.

Supp. 2d 325, 350 (D.D.C. 2005) (granting agency's motion for

summary judgment where defendant conducted an adequate search

after litigation had begun).

Nance also argues that the FBI's searches were inadequate

because the FBI misplaced the negative control tests and results,

and systematically reduced the amount of documents that it

provided in response to Nance's requests.[2]  (Pl.'s Opp'n at 14-

_____

[2] Nance suggests that the FBI must be compelled to comply
with all relevant procedures under the Federal Records Act to
locate the materials that it admits are missing from its files
and prosecute those responsible. (Pl.'s Opp'n at 17.)  However,
if the FBI's search was adequate, Nance would need something more
than speculation to demonstrate why he believes the file could
be found.  See Ground Saucer Watch, Inc. v. CIA., 692 F.2d 770,

-10-

18.)  The adequacy of a search, however, "is not determined by

its results, but by the method of the search itself[,]" and "[a]n

agency's failure to find a particular document does not

necessarily indicate that its search was inadequate." Brown, 675

F. Supp. 2d at 125-26 (citing Weisberg, 745 F.2d at 1485, and

Wilbur, 355 F.3d at 678 (finding that a defendant agency's search

for materials responsive to a FOIA request was not rendered

inadequate because of its failure to locate one specific report,

even though it was undisputed that the report existed) (internal

citation omitted)).  In Oglesby v. U.S. Dept. of Army, 920 F.2d

57, 68 (D.C. Cir. 1990) (citing Weisberg v. U.S. Dept. of

Justice, 627 F.2d 365, 371 (D.C. Cir. 1980) (internal citations

omitted), the D.C. Circuit explained that an agency could

demonstrate appropriate, reasonable search methods by

demonstrating a "systematic approach to document location."

Here, unlike in Weisberg – – where the court of appeals found

that the thoroughness of an FBI search remained in dispute since

the agency's affidavit gave no detail as to the scope of the

search – – the FBI demonstrated the adequacy of its search by

providing a detailed account of the scope of their investigation

by explaining the methods of their search, the search terms used,

---

771 (D.C. Cir. 1981) ("Agency affidavits enjoy a presumption of
good faith, which will withstand purely speculative claims about
the existence and discoverability of other documents.") (internal
citation omitted).

-11-

the indices searched, and additional efforts that went into the search, such as communication with and review of files from the Richmond field office. (See Hardy Decl. at 16-17.) Nance does not offer any evidence to suggest that the FBI failed to search an appropriate number of records systems, failed to review files likely to contain relevant information, or used incorrect or insufficient search terms.

Nance challenges the sufficiency of Hardy's declaration, arguing that it "constitutes a conclusory account of . . . the negative control tests and results" and that it fails to explain why no mention was made of those tests for a period of over 15 years or why those tests are not now in the FBI's laboratory file. (Pl.'s Opp'n at 25.) An affidavit is considered sufficiently detailed and non-conclusory where it contains "search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched[.]". Oglesby, 920 F.2d at 68. While agency affidavits must be reasonably detailed, non-conclusory and submitted in good faith, they are also "accorded a presumption of good faith," forcing a FOIA plaintiff to rebut agency affidavits with something more than pure speculation. SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991). Additionally, the FOIA does not require agencies to create documents, answer questions, or explain what may have happened to

-12-

documents that may have existed at one point but are no longer in the agency's possession.  See Saldana v. Fed. Bureau of Prisons, 715 F. Supp. 2d 10, 19 (D.D.C. 2010); Anderson v. U.S. Dept. of Justice, 518 F. Supp. 2d 1, 10-11 (D.D.C. 2007) ("To the extent that plaintiff's FOIA requests are questions or requests for explanations of policies or procedures, these are not proper FOIA requests.") (internal citations omitted); Ferranti v. U.S. Dept. of Justice, Civil Action No. 03-2385 (RMC), 2005 WL 3040823, at *2 (D.D.C. Jan. 28, 2005) (holding that a defendant agency was not responsible under the FOIA for accounting for previously possessed records because an agency "is responsible for releasing only those records it possessed and controlled at the time of the FOIA request") (citing McGehee v. Central Intelligence Agency, 697 F.2d 1095, 1110 (D.C. Cir. 1983).

Nance concedes that Hardy's declaration is "extremely detailed" but argues that it fails to meet the "nonconclusory" element of the standard because it does not explain how or why the FBI failed to admit or deny the existence of the negative control tests for an extended period of time.[3]  (Pl.'s Opp'n at 24-25.)  Hardy's declaration contains all that is required to render an agency affidavit concerning its search non-conclusory: a detailed explanation of the scope of the search, including

---

[3] Nance also explicitly states that he does not dispute that Hardy's declaration was submitted in good faith.  (Pl.'s Opp'n at 23.)

-13-

search terms, and records systems searched, as well as the
assertion that all files likely to contain responsive documents
were searched.  (See Hardy Decl. at 16-34.)  The fact that the
declaration does not explain how or why the negative control
tests and their results are not currently in the FBI's laboratory
file does not render them conclusory, as the FBI is not
responsible for providing such explanations so long as they
demonstrate that they have conducted an adequate search.  Because
Hardy's declaration contains a detailed explanation of a search
reasonably calculated to uncover all relevant information, and
Nance offers no evidence sufficient to contradict this affidavit,
Nance fails to establish that Hardy's declaration is conclusory.

     The FBI's failure in this case to locate the negative
control tests and results does not render its search inadequate.
See Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 551 (D.C.
Cir. 1994) (explaining that adequacy of a FOIA search is
determined not by the fruits of the search but by the
appropriateness of methods used to carry out the search).

                          CONCLUSION

     The FBI has demonstrated that it conducted a search
reasonably calculated to uncover all information relevant to
Nance's FOIA request through a reasonably detailed nonconclusory
affidavit.  There are no genuine issues of material fact
regarding the adequacy of the defendant's search, and the FBI

-14-

therefore is entitled to judgment as a matter of law.  An

appropriate final order accompanies this memorandum opinion.

SIGNED this 28th day of February, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge